FILED
APR 13 2020
CLERK, U.S. [DISTRICT] CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF TEXAS

VERONICA MARTINEZ CARRERA PEREZ

    MOVANT,

V.                                         CASE NO. 17-CR-01285-KC(3)
UNITED STATES OF AMERICA

    DEFENDANT.

MOTION FOR SENTENCE REDUCTION UNDER 3582(C)(1)(A)(i) AND EMERGENCY RELEASE DUE TO THE CORONA VIRUS AND THE NOW "CARES ACT"

COMES NOW, MOVANT, CARRERA-PEREZ, PRO-SE, AND FOR THE ABOVE-REFERENCED MOTION STATES AS FOLLOWS:

Pursuant to the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors under 18 U.S.C. Section 3553(a) and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. Section 1B1.13. Because Forbes's circumstances fall within the Sentencing Commission's standards for reduction of sentence, we respectfully request the Court grant the requested sentence reduction to time served, or to probation with or without a condition of home confinement, pursuant to 18 U.S.C. Section 3582(c)(A)(1)(i). The Court may order "compassionate release" for "efficient medical treatment even if the BOP could offer good care or for any other "extraordinary or compelling circumstance". CARRERA-PEREZ has both medical and "extraordinary and compelling reasons" for her sentence reduction.

I. Jurisdiction – *Court now allowed to Release inmate to home confinement under are Act signed March 26, 2020. Copy to Warden - Administrative Remedies Moot under U.S. v. Resnik.*

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 U.S.C. Section 3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, which ever is earlier[.]" First Step Act of 2018 at 119.

II. Sentence Reduction Authority Under 18 U.S.C. 3582(c)(1)(A).

As part of the First Step Act, Congress removed a major obstacle from judicial review of sentences to determining whether serious medical conditions and deteriorating physical health made a sentence reduction "sufficient, but not greater than necessary," under 18 U.S.C. Section 3553(a). Under the Act, this Court is afforded jurisdiction to make the Section 3553(a) determination of whether *Movant's 28 Months is sufficient* in light of her medical conditions, is "sufficient, but not greater than necessary," to accomplish the goals of sentencing.

This Court has discretion to reduce the term of imprisonment imposed in this case based on Section 3582(c)(1)(A)(i), which stated in relevant part that the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that---(i) extraordinary and compelling reasons warrant such a reduction [.]" Pursuant to the requirement of 28 U.S.C. Section 994(c), as authorized by 28 U.S.C. Section 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria of "extraordinary and compelling reasons" in U.S.S.G

The defendant is --

(I) Suffering from a serious physical or medical condition;
...
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. Section 1B1.13, comment. n.1(A)(ii) (Nov. 1, 2016). While the Sentencing Commission policy statement or reductions of sentence under 18 U.S.C. section 3582(c)(1)(), U.S.S.G section 1B1.13, list three categories of "extraordinary and compelling reasons" there is no restrictive list of combination of factors that can warrant release. U.S.S.G. SECTION 1B1.13 (p.s.), comment. n.1(A)-(D).

THE DEFENDANT NOW ALSO CAN BE RELEASED IMMEDIATELY TO HOME CONFINEMENT DUE TO THE "CARE ACT" SIGNED ON MARCH 298, 2020. SEE CASE UNITED STATES V. RESNIK CASE NO. 1:12-CR-00152-CM (SDNY APRIL 12, 2020) WHERE EMERGENCY MOTION ON THE COVID VIRUS WAS GRANTED DUE TO PANDEMIC WHERE MOVANT ONLY SERVED 9 MONTHS OF 36 MONTHS FOR FRAUD.

III. Procedural History

CARRERA-PEREZ was found guilty statute number 841/846 a methamphetamine charge along with a 1956 money laundering charge. She was sentenced to approximately 288 months imprisonment. She has been incarcerated for approximately for over 28 plus months or more including credit for jail time.

IV. CARRERA-PEREZ Presents "Extraordinary and Compelling Reasons" Warranting a Reduction in Sentence Under 18 U.S.C. Section 3582(c)(1)(A). *movant is only living parent for 9 yr old minor child.*

1. CARRERA-PEREZ's "Extraordinary and Compelling Reasons."

CARRERA-PEREZ meets the threshold requirement of "extraordinary and compelling reasons" warranting a reduction in her sentence to time served, or in the alternative, probation with or without home confinement.

1. The 18 U.S.C. Section 3553(a) Factors As Applied to CARRERA-PEREZ.

Since CARRERA-PEREZ's sentencing date the factors under section 3553(a) factors have changed and weigh heavily in favor of a reduced sentence at this time: (1)"the history and characteristics of the defendant," 18 U.S.C. section 3553(a)(1), and (2) " the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner, " 18 U.S.C. Section 3553(a)(2)(D). CARRERA-PEREZ's "history and characteristics" have changed since her incarceration. The changes and characteristics leading to her extraordinary and compelling reasons are attached.

The remaining Section 3553(a) factors also support a reduction of CARRERA PEREZ sentence or are neutral. In terms of "history and characteristics" MOVANT is over 40 years old and, as we have noted and her recidivism rate is low.

WHEREFORE, MOVANT asks this court for immediate release due to the Corona Virus epidemic and under the "cares act" to be released immediately to home confinement. MOVANT is subject to possible contagious Corona Virus Inmates that will kill many inmates due to their close quarters. Attached is a copy of the extraordinary and compelling reasons for Movant's release.

Respectfully Submitted,

VERONICA MARTINEZ CARRERA PEREZ
FMC Carswell
PO Box 27137
Ft. Worth, Texas 76127

TRULINCS                                    Unit: CRW-I-S

--------------------------------------------------------------------------

1

1. MOVANT WAS SENTENCED ON __5-16-19__.

2. DEFENDANT WAS SENTENCED TO A TOTAL INCARCERATION __288__ MONTHS FOR THE CHARGE OF: __841/846/1956__.

3. DEFENDANT IS A FIRST TIME FEDERAL OFFENDER. __MOVANT CHARGE UNDER 851 ENHANCEMENT__

4. DEFENDANT IS A NON-VIOLENT OFFENDER.

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 U.S.C. Section 3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defense motion for reduction in sentence when the defendant is a first time federal offender and has never had a federal violent crime.

Under Section 602. Home Confinement for Low-Risk Prisoners. This part of the First Step Act changes current law to make clear that Congress intends for low-risk inmates to spend as much time as possible on home confinement.

Congress left the possibility for the court to go back under a 3582 Motion to allow first-time federal, non-violent offenders to be allowed to do part of their time on a monitor/home-confinement.

The Movant has already established a place to reside when she is released and would make an excellent candidate to be placed on home confinement with a monitor. When released Movant will be residing with __my in-laws until I can afford my own residence.__

Movant has the current medical problems/conditions: __Shortness of Breathe/Possibility of Breast Cancer, Left Calcaneal Lacture__

Movant has engaged in programming during incarceration that would indicate efforts to improve custodial skills and/or that would indicate a commitment to not only herself but her family and society. Those programs are listed below:

SEE ATTACHED UNIT TEAM PAPERWORK

** Movant is currently employed by the FMC-Carswell, Texas as a unit orderly but has held a position as a plumber for years giving her the experience needed to get a plumbers position after leaving prison and making her a valued member to society..

The question arises to this honorable court to answer- whether the main point of incarceration is for punishment or for correctional rehabilitation and correctional self-improvement. For many years now, the United States government has proclaimed that punishment leads to violence and violence leads to commitment of crime; while correctional rehabilitation and self-improvement leads to change in attitudes and behavior leading to betterment for all of the communities in the United States of America. The Movant in this Motion is one of the few exceptions who has a low recidivism rate that her release will only better society as a whole. If this court weighs the situation the Movant's contributions to society completely outweigh her need for incarceration given her low recidivism rate. The First Step Act was designed for individuals like Movant who can prosper out in society on a Monitor or home confinement. This Movant is facing the possibility of a life sentence which was not intended for the Movant due to the epidemic of the Corona Virus and the news and experts are calling for the release of low security risk inmates like the defendant.

The movant's case does contain some very extraordinary circumstances: There would be little to shield her from the Corona Virus if and when it hits the prison system. That in itself is a reason for Movant to considered under extreme and compelling reasons.

*Movant should be allowed*
go home on a monitor for the continued length of her sentence. Movant given her low recidivism rate and proven rehabilitation should now be considered for home confinement even if required to be placed on an ankle monitor paid out of pocket by the movant.

Movant has made appropriate actions to resolve any detainers, has shown institutional adjustment, has not had any 100 or 200 series institutional infractions in the last 3 months may be seen by any requested Federal Bureau of Prisons Paperwork, Movant has release plans that will further insure her release plans (employment, medical, financial) and Movant realizes that releasing her on a home monitor would not in any way minimize the severity of the offense.

WHEREFORE, UNDER 3582(C)(a)(1)(i) AND SECTION 602 OF THE FIRST STEP ACT MOVANT, MOVANT REQUESTS AN ORDER FROM THIS COURT BE ISSUED SO THAT THE FBOP WILL HONOR THE HOME CONFINEMENT OR AN APPROPRIATE SENTENCE REDUCTION AS INTENDED BY CONGRESS AND THE PRESIDENT AS SIGNED FOR DECEMBER 21, 2018. THE EMERGENCY SITUATION OF THE CORONA VIRUS GIVEN MOVANT'S HEALTH SHOULD ALSO BE TAKEN INTO CONSIDERATION. THOSE LOCKED UP IN A FEDERAL PRISON WILL BE IN EXTREME DANGER AND AT RISK OF DEATH GIVEN THE CLOSE QUARTERS IN THE FEDERAL PRISON SYSTEM. MOVANT HAS SENT A REQUEST TO THE WARDEN, HOWEVER DURING THIS EMERGENCY SITUATION THE CARE ACT HAS AND ALLOWS THE JUDICIAL SYSTEM TO RELEASE INMATES WHO MAY DIE OTHER WISE.

MOVANT WILL PROVE AND SHOW THIS COURT THAT IT WILL NOT BE SORRY FOR THE MOVANT'S RELEASE AND MOVANT WILL SHOW THIS COURT HOW HER REHABILITATION NO MATTER HOW LONG WILL BE A BENEFIT TO SOCIETY.

With the changes made to the Compassionate release statute by the First Step Act, courts need not await a motion from the Director of the BOP to resentence prisoners to time served under 18 U.S.C. Section 3582 (C)(1)(A)(i) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical, elderly or family circumstances.

A. When Congress originally enacted Section 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical family, or elderly circumstances.

Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. Section 3582 as part of *the Comprehensive Crime* Control Act of 1984. Section 3582(c) states that a District Court can modify even a _____ "term of imprisonment" in four situation, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. Section 3582 (C)(1)(A)(i).

In 1984, Congress conditioned the reduction of sentence on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. Id.

Congress NEVER defined what constitutes an "extraordinary and compelling reason" for resentencing under section 3582(c). But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. Non. 98-225 at 52, 53 n. 74 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stress HOW SOME INDIVIDUAL CASES MAY STILL WARRANT A SECOND LOOK AT RESENTENCING.

The committee believes that there by be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changes circumstances. These would include cases of severe illness cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. Id. at 55-59 (emphasis added). Rather than having the Parole Commission review every federal sentence focused only on an offender rehabilitation, Congress decided that section 3582(c) could and would enable courts to decide in individual cases, if "there is a justification for reducing a term of imprisonment." Id. at 56.

Congress intended for the situations listed in section 3582(c) to act as "safety valves for modification of sentences," id. at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would " assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in guidelines." Id. Noting that is approach would keep "the sentencing power IN THE JUDICIARY WHERE IT BELONGS," rather than with the federal parole board, the statute permitted" later review of sentences in particularly compelling situations." Id. (emphasis added).

Congress thus intended to give federal sentencing courts an equitable power that should be employed on an individualized basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety valve of section 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55-56.

B. The U.S. Sentencing Commission concluded that Section 3582(c)(1)(A)'s "extraordinary and compelling reasons" for compassionate release are not limited to medical, elderly, or family circumstances.

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). See 28 U.S.C. section 994(t) ("The Commission. . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to ne applied an a list of specific examples."). Congress provided only one limitation to that delegation of authority:" [r]ehabilitation of the defendant along shall not be considered an extraordinary and compelling reason." 28 U.S.C. section 994(t) (emphasis added). Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances so that sentencing courts could not

use it as a full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of modifier "alone" signifies just the opposite: THAT REHABILITATION COULD BE USED IN TANDEM WITH OTHER FACTORS TO JUSTIFY A REDUCTION.

The Commission initially neglected its duty, leaving the BOP to fill the void and create the standards for extraordinary and compelling reasons warranting resentencing under section 3582 (c)(1)(A). [] The Commission finally action in 2007, promulgating a policy that extraordinary and compelling reasons includes medical conditions, age, family circumstances, and "other reasons." U.S.S.G. section 1B1.13, application not 1(A) modification even for prisoners who met the objective criteria, see U.S. Dep't of Justice Office of Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013) ("FBOP Compassionate Release Program"), the Commission amended its policy statement, amended its policy statement, expanding the guidance to courts on qualifying conditions and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G. Section 1B1.13. Id. at application note 4; see also Untied States v. Dimasi, 220 F.Supp. 3d 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to new "encouraging" guidelines).

The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant," including terminal illness and other serious conditions and impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) "Family Circumstances," where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) "Other Reasons." when the Director of the BOP determines there is "an extraordinary and compelling reason other than, other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., application not 1 (A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. section 1B1.13, application note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." Id.

Consistent with text and legislative history of section 3582(c), the Commission concluded that reasons beyond medical, age and family circumstances could qualify as "extraordinary and compelling reasons" for resentencing, and that the extraordinary or compelling reasons NEED NOT BE BASED ON CHANGED CIRCUMSTANCES OCCURRING AFTER THE INITIAL SENTENCING OF THE DEFENDANT.

C. THROUGH THE FIRST STEP ACT, CONGRESS CHANGES THE PROCESS FOR COMPASSIONATE RELEASE BASED ON CRITICISM OF BOP'S INADEQUATE USE OF ITS AUTHORITY, RETURNING TO THE FEDERAL JUDICIARY THE AUTHORITY TO ACT ON IT OWN TO REDUCE SENTENCES FOR "EXTRA ORDINARY AND COMPELLING REASONS."

Prior to Congress passing the First Step Act, the process for compassionate release under section 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under section 3582(c), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and file a motion in the sentencing court. If such a motion was filed, the sentencing court could then decide where "the reduction was justified by extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." Id. So even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce a sentence, and the prisoner was unable to secure a sentence reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon. []

THIS IS NO LONGER THE CASE AND THE JUDICIARY MEANING THE COURT SYSTEM MAY NOW TAKE BACK AND GIVE FEDERAL INMATES A SENTENCE REDUCTION PUTTING THE REDUCTIONS BACK INTO THE COURTS HANDS WHERE THEY SHOULD BE.

D. STATUTORY TEXT DEFINES JUDICIAL SENTENCE REDUCTION AUTHORITY AROUND "EXTRAORDINARY AND COMPELLING REASONS," AND THE POLICY STATEMENTS OF THE U.S. SENTENCING COMMISSION UNDER SECTION 1B1.13 DO NOT PRECLUDE THIS COURT FROM RESENTENCING THE MOVANT REFERENCE ABOVE.

Once a prisoner has properly pursued administrative remedies and filed a motion for compassionate release, a federal court possesses authority to reduce a sentence IF AND WHENEVER the court finds "extraordinary and compelling reasons warrant such a reduction. A court must consider the 18 U.S.C. Section 3553(a) sentencing factors in reducing any sentence, and any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. section 3582(c)(1)(A).

TRULINCS                                              - Unit: CRW-I-S

---

ATTACHED IS THE EXTRAORDINARY AND COMPELLING REASONS FOR THE SENTENCE REDUCTION FOR THE MOVANT.

THIS IS EXTREMELY IMPORTANT GIVEN THE COVID-19 SITUATION. SEE CASE UNITED STATES V. RESNIK CASE NO. 1:12-CR-00152-CM (SDNY 1:12-CR-00152-CM) WHERE AN EMERGENCY MOTION WAS GRANTED FOR THE COVID VIRUS WHERE A PRISONER ONLY SERVED 9 MONTHS ON A 36 MONTH SENTENCE FOR FRAUD.

