JUDGE KATHLEEN CARDONE

FILED
MAY 04 2020
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

AO 243 (Rev. 01/15)  Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District **Western District of Texas** |
|---|---|
| Name (under which you were convicted): **Veronica Martinez Carrera Perez** | Inmate #: **29033013** |
| Place of Confinement: **FMC-Carswell-Texas** | Case #: **EP:17-CR-01286-KC(3)** |
| UNITED STATES OF AMERICA | Movant (include name under which convicted) |
| v. **Veronica Martinez Carrera-Perez** | |

MOTION  **EP 20 CV 0122**

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   **Western District of Texas**

   (b) Criminal docket or case number (if you know): **EP:17-CR-01286-KC(3)**

2. (a) Date of the judgment of conviction (if you know): **May 16, 2019**
   (b) Date of sentencing: **May 16, 2019**

3. Length of sentence: **288 months**

4. Nature of crime (all counts): **21:846, 84(B)(1)(A), 841(A)(1) & 851 - Consp. To Possess 5KG or More of Mixture of Substance Containing Detectable Amount of Cocaine; 21:846, 841(B)(1)(A), 841(A)(1) & 851 Conspiracy to Possess 50G or More Containing a detectable amount of Methamphetamine; Supervised Release Violation of 21:841, 1956 - Money Laundering.**

5. (a) What was your plea? (Check one)
   (1) Not guilty ☐  (2) Guilty ☒  (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one) **N/A**  Jury ☐  Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?  Yes ☐  No ☒

8. Did you appeal from the judgment of conviction?  Yes ☐  No ☒

g. Movant Did not File a Petition for Certiorari in the US Supreme Court.

  (1) Docket or case number (if you know): __N/A.__
  (2) Result: _____

  (3) Date of result (if you know): _____
  (4) Citation to the case (if you know): _____
  (5) Grounds raised: _____
  _____
  _____
  _____
  _____
  _____
  _____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?
  (Yes) No

11. If your answer to Question 10 was "Yes," give the following information:
  (a)(1) Name of court: __Western District of Texas__
  (2) Docket or case number (if you know): __EP:17-CR-01286-KC(3)__
  (3) Date of filing (if you know): __Approximately April 9, 2020__
  (4) Nature of the proceeding: __3582(c)(1)(A) Compassionate Release for Corona Virus.__
  (5) Grounds raised: _____
  __Health Issues along with Extraordinary and Compelling Circumstances__
  _____
  _____
  _____

  (6) Did you receive a hearing where evidence was given on your motion, petition, or application?
  Yes (No)
  (7) Result: __None as of todays date__
  (8) Date of result (if you know): __N/A__

  (b) If you filed any second motion, petition, or application, give the same information:
  (1) Name of court: __No Other Motions Filed__
  (2) Docket or case number (if you know): __N/A__
  (3) Date of filing (if you know): _____
  (4) Nature of the proceeding: _____
  (5) Grounds raised: _____
  _____
  _____
  _____
  _____
  _____
  _____
  _____

  (6) Did you receive a hearing where evidence was given on your motion, petition, or application?
  Yes (No)
  (7) Result: __N/A__

410cr      3

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

29033013

(8) Date of result (if you know): __N/A__

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition: Yes  No __no.__

(2) Second petition: Yes  No __no.__

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: __My Attorney Failed to File An Appeal or go over Pros/Cons of filing an Appeal.__

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

GROUND ONE: __1. Defendant's Drug Amount was incorrect because the amount of cocaine and methamphetamine was based upon an unreliable CI's Information.__

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
__The actual amount of drugs consisted of 33 kilograms of Cocaine, and 23.13 kilograms of pure methamphetamine. However, the information was was multipled by 14 according to the Plea Agreement. This information is from unreliable CI's and now under the Holding Case in the 7th Circuit (No.18-3270)(1-28-2020) is no longer valid. Defendant may only be sentenced under the Actual Amount of Drugs, not the word of unreliable CI's (See Attached Case)__

(b) Direct Appeal of Ground One:
(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes  (No)

(2) If you did not raise this issue in your direct appeal, explain why: __Attorney Failed to File An Appeal nor did she go over the pros/cons with defendant and Ineffective Assistance of Counsel.__

(c) Post-Conviction Proceedings:
(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes (No)

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition: __N/A__
Name and location of the court where the motion or petition was filed: _____
Docket or case number (if you know): _____

410cr

4

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?
Yes  **No**

(4) Did you appeal from the denial of your motion, petition, or application?
Yes  **No**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes  **No**

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

**GROUND TWO:** The information used and obtained from the illegal warrant to obtain CPNI/Cell phone locator information is a violation of Defendant's Fourth Amendment Rights.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The government violated the Defendant's 4th Amendment Rights to Privacy when it failed to obtain a warrant from the Cellular Phone Company only a "Court authorized" warrant. Therefore under Carpenter Supreme Court Case 585 U.S. ___ (2018) the warrant is invalid and all information obtained under The Fruit of the Poisonous Tree Doctrine must be suppressed and thrown out. (See Attached Exhibit B)

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes **No**

(2) If you did not raise this issue in your direct appeal, explain why: Attorney failed to File for Appeal or to go over Pros/Cons of Appeal with Defendant. Ineffective Assistance of Counsel.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes **No**

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: _____

410cr

5

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?
Yes **No**

(4) Did you appeal from the denial of your motion, petition, or application?
Yes **No**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes **No**

(6) If your answer to Question (c)(4) is "Yes,'" state:
Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A.

**GROUND THREE:** Defendant's Attorney failed to Ask Defendant if She would like to file a Appeal nor did She go over the Pros and Cons of Filing An Appeal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Defendant's Attorney is Required by law to File a Notice of Appeal for hiR Client. The Attorney is also required to go over the Pros and Cons of filing an Appeal. Defendant is entitled to an evidentiary hearing on this issue. See United States v. Hering (2019) (No. 18-4023, 10th Circuit).

(b) **Direct Appeal of Ground Three:**
(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes **No**

(2) If you did not raise this issue in your direct appeal, explain why: Attorney Failed to go over Pros/Cons of Appeal or to File Notice of Intent To Appeal.

(c) **Post-Conviction Proceedings:**
(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes **No**

Ineffective Assistance of Counsel.

410cr                                                     6

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition: __N/A__
Name and location of the court where the motion or petition was filed: _____
Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?
Yes  **No**

(4) Did you appeal from the denial of your motion, petition, or application?
Yes  **No**

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes  **No**

(6) If your answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed: __N/A__
Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

**GROUND FOUR:** Defendant's 851 Enhancement is invalid due to the fact that one of the charges was 19 years old.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Defendant received a charge under 851 enhancement. One of her previous charges that led to the 851 enhancement was a Conspiracy to Possess Cocaine sentence from June 23, 2000 more than 15 years old at the time of Defendant's 5/16/2019 sentencing date. At the least Under 3553(a) mitigating factors under Booker er attorney had the duty to try to mitigate her points to a lower level due to the charge being 19 years old.

(b) **Direct Appeal of Ground Four:**
(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes  **No**

(2) If you did not raise this issue in your direct appeal, explain why: Attorney failed to file Notice of Intent to Appeal or to go over Pros/Cons of Appeal with the Defendant.

410cr

7

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐ No ☑

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition: __N/A__
Name and location of the court where the motion or petition was filed: _____
Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐ No ☑

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐ No ☑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes ☐ No ☑

(6) If your answer to Question (c)(4) is "Yes," state:
Name and location of the court where the appeal was filed: __N/A__
Docket or case number (if you know): _____
Date of the court's decision: _____
Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: __N/A__

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: __None Previously Presented 1st 2255__

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging? Yes ☐ No ☑
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. __N/A__

410cr

8

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _S. Bunn_

(b) At arraignment and plea: _S. Bunn_

(c) At trial: _N/A_

(d) At sentencing: _S. Bunn_

(e) On appeal: _N/A_

(f) In any post-conviction proceeding: _N/A_

(g) On appeal from any ruling against you in a post-conviction proceeding: _N/A_

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes **No**

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? Yes **No**

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future? Yes No

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion. *

_1st 2255 — Timely Filed within 1 Year of Sentencing._

410cr

9

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

Therefore, movant asks that the Court grant the following relief: _expedited evidentiary hearing on issues and sentence reduction._ _____

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion Under 28 U.S.C. § 2255 was placed in the prison mailing system on _April 30, 2020_ (month, date, year).
Executed (signed) on _[signature]_ _4/30/20_ (date).

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _4/30/20 Self_

410cr              10

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2903301

1  February or March 2016.
2       MS. NEWAZ: During your investigation of this
3  organization, what are the methods that you utilized in order
4  to investigate it?
5       AGENT GAMEZ: We used multiple wire intercepts, GPS
6  data location, and cooperating defendants and sources.
7       MS. NEWAZ: You mentioned wiretaps. Is this
8  wiretapping of individual phones?
9       AGENT GAMEZ: Yes, ma'am.
10      MS. NEWAZ: You also wiretapped individuals Facebook
11 accounts; is that right?
12      AGENT GAMEZ: That's correct.
13      MS. NEWAZ: Did you have wire intercepts on devices
14 utilized by Ms. Carrera Perez?
15      AGENT GAMEZ: Yes, ma'am.
16      MS. NEWAZ: Numerous?
17      AGENT GAMEZ: Yes, ma'am.
18      MS. NEWAZ: And during these wire intercepts and based
19 on your investigation, were you able to identify members of
20 this organization?
21      AGENT GAMEZ: Yes.
22      MS. NEWAZ: Recently an indictment was handed down in
23 this particular case; is that right?
24      AGENT GAMEZ: Correct.
25      MS. NEWAZ: About how many people have currently been

```
1       AGENT GAMEZ:  Yes.
2       MS. NEWAZ:  And they would enter back into the
3  United States?
4       AGENT GAMEZ:  Yes.
5       MS. NEWAZ:  And they would transport the narcotics to
6  destination cities?
7       AGENT GAMEZ:  Correct.
8       MS. NEWAZ:  In this particular investigation, what are
9  the destination cities where drugs have been destined to that
10 you actually seized?
11      AGENT GAMEZ:  Primarily it was Chicago.  We seized
12 towards Atlanta and Wichita.
13      MS. NEWAZ:  Let me focus in on Ms. Carrera Perez.
14 During all of these different seizures that you talked about
15 with all of these different narcotics, what was her role, what
16 was she doing?  I know you will answer this based on what you
17 know from wire intercepts and your overall investigation.
18      AGENT GAMEZ:  She was the recruiter that would recruit
19 the couriers to transport the narcotics.  She would also
20 oversee the delivery of the narcotics.
21      MS. NEWAZ:  Would she provide all of these people
22 instructions on what they were supposed to do?
23      AGENT GAMEZ:  Yes.
24      MS. NEWAZ:  Where they were supposed to go?
25      AGENT GAMEZ:  Yes.
```

1  your investigation of this organization maintain constant
2  contact with the source of supply of these narcotics in
3  Michoacan, Mexico?
4         AGENT GAMEZ: Yes.
5         MS. NEWAZ: What are the ways in which she would
6  maintain contact with the source of supply?
7         AGENT GAMEZ: Via phone, Facebook, WhatsApp.
8         MS. NEWAZ: And you in your investigation had evidence
9  of her talking on the phone to the source of supply in
10 Michoacan; is that right?
11        AGENT GAMEZ: Yes.
12        MS. NEWAZ: And also communicating via Facebook with
13 the source of supply?
14        AGENT GAMEZ: Yes.
15        MS. NEWAZ: When she went to Michoacan, did she
16 personally meet with the source of supply?
17        AGENT GAMEZ: Yes.
18        MS. NEWAZ: I want to talk to you a little bit -- was
19 Ms. Carrera Perez at least, in part, a focus of your
20 investigation?
21        AGENT GAMEZ: Yes.
22        MS. NEWAZ: During this investigation, you said it
23 lasted early 2016. Is it through the present?
24        AGENT GAMEZ: Correct.
25        MS. NEWAZ: You were intercepting Ms. Carrera Perez on

```
 1  her phone; is that correct?
 2          AGENT GAMEZ:  Correct.
 3          MS. NEWAZ:  For many months?
 4          AGENT GAMEZ:  Correct.
 5          MS. NEWAZ:  Did you while you were intercepting
 6  communications, did you intercept communications relating to
 7  her child?
 8          AGENT GAMEZ:  Yes.
 9          MS. NEWAZ:  Two incidents involving her child?
10          AGENT GAMEZ:  Yes.
11          MS. NEWAZ:  Did Ms. Carrera Perez take her child to
12  Michoacan with her?
13          AGENT GAMEZ:  Yes.
14          MS. NEWAZ:  Was this child present when
15  Ms. Carrera Perez would meet with the source of supply?
16          AGENT GAMEZ:  Yes.
17          MS. NEWAZ:  Did Ms. Carrera Perez take this child
18  along with her in her drug trafficking efforts?
19          AGENT GAMEZ:  Yes.
20          MS. NEWAZ:  Tell me with regard to intercepts that you
21  -- were there situations where you intercepted communications
22  where you were worried about the welfare of this child?
23          AGENT GAMEZ:  Yes.
24          MS. NEWAZ:  Give me an example.
25          AGENT GAMEZ:  One of the very first ones is we
```

1  what you know about, I guess, their living situation. I think
2  -- with regard to Ms. Carrera Perez, you testified a bit about
3  McAllen, Texas. Does she also reside here in El Paso, Texas?
4      AGENT GAMEZ: Yes.
5      MS. NEWAZ: Some of these drug trafficking, the
6  planning and different incidents, did they take place here in
7  El Paso?
8      AGENT GAMEZ: Yes.
9      MS. NEWAZ: Did she also or did she have a residence
10 in McAllen, Texas as well?
11     AGENT GAMEZ: Yes.
12     MS. NEWAZ: During your intercepts of her
13 communications on the telephone, did you find out and
14 understand she spent significant portions or periods of time in
15 Mexico?
16     AGENT GAMEZ: Yes.
17     MS. NEWAZ: How long would she go over there for
18 sometimes?
19     AGENT GAMEZ: At times it would be a couple of days,
20 and at times it would be a week or more.
21     MS. NEWAZ: You also pulled crossing history at least
22 previously in your investigation of this case, correct?
23     AGENT GAMEZ: Yes.
24     MS. NEWAZ: Can you give this Court an approximation
25 of how often Ms. Carrera Perez personally was traveling over

1  asked why he was there. I explained the charges against him.
2  We told him the reason we had questions as far as his drug
3  trafficking activities. He stated he was not a drug
4  trafficker. At that point, the interview ended.
5      MS. NEWAZ: I pass the Witness.
6      THE COURT: Ms. Bunn?
7      MS. BUNN: Thank you.
8  What was the specific date of the commencement of this
9  investigation?
10     AGENT GAMEZ: February 2016.
11     MS. BUNN: Do you have a date in February 2016?
12     AGENT GAMEZ: I do not.
13     MS. BUNN: Did you begin this investigation or did
14 another agent begin this investigation?
15     AGENT GAMEZ: Another agent.
16     MS. BUNN: How do you know it began in February 2016?
17     AGENT GAMEZ: Based on documents and speaking to the
18 other agents.
19     MS. BUNN: So, this comes off hearsay and what you
20 read that others have said, right?
21     AGENT GAMEZ: Correct.
22     MS. BUNN: It is not your own personal information
23 that you yourself know firsthand, correct?
24     AGENT GAMEZ: When it started?
25     MS. BUNN: Yes, ma'am.

1   AGENT GAMEZ: As far as the date it started, that's
2   the information I have of the date, yes.
3   MS. BUNN: What specifically transpired in the
4   investigation that made Ms. Martinez a subject in this case?
5   AGENT GAMEZ: She was first -- I guess they first
6   started investigating Ms. Carrera Perez while she was
7   intercepted in another investigation.
8   MS. BUNN: So, she was being intercepted. Intercepted
9   how?
10  AGENT GAMEZ: There was a court authorized wire
11  intercept on a different target in a different investigation
12  that Ms. Carrera Perez was intercepted on.
13  MS. BUNN: Were you initially involved in that
14  investigation?
15  AGENT GAMEZ: I came to be involved in that
16  investigation, yes.
17  MS. BUNN: But you were not involved when it was
18  originally intercepted, correct?
19  AGENT GAMEZ: No.
20  MS. BUNN: Were you the agent that was personally
21  involved when Ms. Martinez was intercepted?
22  AGENT GAMEZ: During that time, no.
23  MS. BUNN: How did you find out about that?
24  AGENT GAMEZ: I listened to the intercepts, and,
25  again, I read the reports and have spoken to the case agents on

# Affidavit Adendum

Luis Issac Carillo          POD: 802B
SO#: 9522715                Date: 4-23-2020
DOB: 5/29/90

On March 11th 2020 on or About the hours of 6:45pm I was housed in POD 130. I was out in the day room. I decided to reach out to the other inmates, and explain to them that I was Xing myself out of the Chico Tango Prison Gang. To start a fresh new life, and to welcome myself back to society as a changed individual. After I explained my departure from the Chicotango Prison Gang I was aggresivley approached by several inmates with anger chalenging me to a fight. When I declined the request about a dozen more inmates approached using profound language forcing me against my will to fight. As the situation escalated CPL Figiroua addressed the tank and asked if there was any problems, the Tank in POD 130 said no. So he left which it at the same time being the end of his shift and Officer Conejudo took incharge of the PM shift. As CPL Figiroua left the POD inmate Alejandro Graytan approached me from behind and struck me with his right hand a dozen other inmates followed soot and continued the brutal Assault. From my own knowledge before I became unconxious I was carried in to room 27 where I was Kicked, punched and stomped on by other inmates. Being the last thing I remember before waking up thrown in the shower and left to more serious injuries. When I awoke I was bleeding from my head, nose, ears, and mouth. Later finding out that I had hemriging from my brain and nose. Leading to nerve damage in my left eye.

By the time Officer Corejudo did his POD check 45 min had past after my Assault. Leaving me at risk for a long period of time to where something worse could have happened. Maybe even causing death. After Corejudo being an Officer at the El Paso County Jail Annex noticed my injurys he escorted me out of POD 130 to the infirmary. After the nurses took my vitals they noticed my vitals were at a life threatning point to where they made a decision to send me to Providence East located in El Paso Texas East Side division. I faintly remember my visit to the hospital due to the fact where I was highly sedated by the prescriptions I was given. I'm asking that you all please take my lawsuit serious and seek justice in my behalf. After I was released from the hospital I was taken back to the El Paso County Jail Annex located on 12501 Montana Ave by Officer Hoyt and Officer Martinez. After my vitals were checked in the infirmary the escorted me to POD 1020 where I was housed again with "X Chuco Tango" inmates. To find out that they were all still very active Chuco Tango Gang members leaving my life at risk again to being assaulted. I hope my out reach for help in this situation is taken serious and sought threw in a professional matter. Thank You for your time and concern.

Sincerly,

After my Assault SGT. Santante refused to call my emergency contacts to let my family know what happen to me leaving them at the El Paso County Jail Annex staff members being very unprofessional

Veronica Carrera Perry #29033-013
FMC Carswell
P.O. Box 27137
Ft. Worth TX 76137



JUDGE KATHLEEN CARDONE

EP 20CV0122

FILED
MAY 04 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT TEXAS
BY _____ DEPUTY

JUDGE KATHLEEN CARDONE

Albert Armendariz, Sr.
U.S. Courthouse
525 Magoffin Ave Rm #105
El Paso, Texas 79901

9 1640 0001 5820 4375


CERTIFIED MAIL